**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SHARON LINCOLN-ODUMU,

      Plaintiff,

      v.

MEDICAL FACULTY ASSOCIATES, INC.,

      Defendant.

Civil Action No. 15-1306 (BAH)

Judge Beryl A. Howell

<u>**MEMORANDUM OPINION**</u>

    The plaintiff, Sharon Lincoln-Odumu, brings this action against her employer, Medical Faculty Associates, Inc. ("MFA"), alleging that she is owed unpaid wages stemming from overtime hours she worked, but was directed not to report on her timesheets, for a period of three years beginning in October 2012.  Claiming that MFA's failure to compensate her adequately for these hours violated District of Columbia and federal law, the plaintiff seeks backpay, liquidated damages, and reimbursement of the attorneys' fees and litigation costs she incurred in bringing this action.  Pending before the Court is MFA's motion to dismiss the plaintiff's Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Def.'s Mot. Dismiss Am. Compl. ("Def.'s Mot."), ECF No. 13, and the plaintiff's motion for leave to file a Second Amended Complaint, Pl.'s Mot. Leave to File Second Am. Compl. ("Pl.'s Mot."), ECF No. 14.  For the reasons set out below, the plaintiff's motion to amend is granted and the defendant's motion to dismiss is thus denied as moot.

## I.    BACKGROUND

    MFA is an independent physician group organized as a non-profit corporation with a principal place of business in the District of Columbia.  Second Am. Compl. ("SAC") ¶¶ 9–10, ECF No. 14-1; Def.'s Mem. Supp. Mot. Dismiss Am. Compl. ("Def.'s Mem.") at 3, ECF No. 13.

Among other ventures, MFA provides medical services to the Center for Sleep Disorders, a joint venture of MFA and George Washington University Hospital.  Def.'s Mem. at 3.  The plaintiff has worked for MFA since 2000, SAC ¶ 17, and assumed her current position as a Sleep Technician in November 2009, *id.* ¶¶ 35–36; Def.'s Mem. at 4.  In this role, the plaintiff is responsible for reviewing and scoring the results of sleep studies conducted at the George Washington University Hospital in Washington, D.C.  SAC ¶ 18.

Prior to 2010, the plaintiff performed her job duties from an MFA office in the District of Columbia.  *Id.* ¶ 24.  Sometime in early 2010, however, MFA assigned the plaintiff to a telework position based out of her worksite in the District.  *Id.* ¶ 25.  Since that time, while the plaintiff's position has been based in the District, the plaintiff has performed work duties primarily from her home in Manassas, Virginia.  Pl.'s Opp'n Def.'s Mot. Dismiss Pl.'s Am. Compl. ("Pl.'s Opp'n") at 2, ECF No. 15.  While the plaintiff generally works from home, the plaintiff alleges that MFA does not maintain a facility in Virginia, SAC ¶ 29, and, as a result, the plaintiff continues to report to and submit her timesheets to MFA supervisors in the District of Columbia, *id.* ¶¶ 26–28, 35, 38 (explaining that the plaintiff's pay statements are issued from the District of Columbia and list her worksite as MFA's current address in the District).

Beginning in November 2009, the plaintiff alleges that her immediate supervisor directed her to modify the way in which she recorded the hours she worked for MFA.  Specifically, the plaintiff alleges that she was directed not to record the number of *hours* she spent reviewing and scoring sleep reports, and instead to calculate her time based solely on the number of *reports* she reviewed and scored.  *Id.* ¶¶ 40–41.  Thus, while the plaintiff avers that the actual time she spent reviewing an individual sleep report varied, with some reports taking over two hours to complete, *id.* ¶ 42, she claims she was directed to record one and a half hours for completing one

sleep study; three hours for completing two studies; six hours for completing three studies; eight hours for completing six studies; and ten hours for completing eight studies, *id.* ¶ 41 (the plaintiff refers to this standardized timekeeping method as the "Defendant's Calculation Method"). More recently, in April 2015, the plaintiff alleges that her supervisor directed her to begin recording only one hour for each completed sleep study. *Id.* ¶ 55. According to the plaintiff, this method of recording her hours did not accurately reflect the number of hours she worked on behalf of MFA. *Id.* ¶ 44.

In addition to directing her to record her hours based on the Defendant's Calculation Method, beginning in October 2012, the plaintiff alleges that her supervisor instructed her to limit artificially the amount of hours she reported on her timesheets to eighty hours per two-week period regardless of the amount of time she actually worked. *Id.* ¶ 47. Later, in December 2013, the plaintiff claims that she was directed to record no more than eighty-eight hours in any two-week period, thus limiting the total number of overtime hours she reported to eight per two-week period. *Id.* ¶¶ 50–51. As a result, according to the plaintiff, she was not paid for the overtime hours she worked from October 2012 to December 2013, *id.* ¶¶ 58–63, 79, or for any overtime hours she worked beyond the eighty-eight-hour cap imposed in December 2013.

As a result of these restrictions, the plaintiff asserts that she regularly worked overtime hours for which she was not compensated between 2012 and 2015. *Id.* ¶¶ 58–64 (identifying six weeks in the summer of 2013 during which the plaintiff worked at least four and a half overtime hours for which she has not been paid). While she was prohibited from reporting these hours on her timesheets, the plaintiff claims that her supervisor ordered her to keep track of the true number of hours she worked and assured the plaintiff she would be paid for those hours eventually. *Id.* ¶ 52. MFA has yet to pay the plaintiff for these overtime hours. *Id.* ¶ 53. In

May 2015, the plaintiff received from MFA's Chief Human Resources Officer a notification, required under District of Columbia law, indicating her hourly rate of pay and eligibility for overtime pay as a non-exempt employee. *Id.* ¶¶ 30–34.

In response, the plaintiff filed the instant action on August 12, 2015. *See* Compl., ECF No. 1. After MFA moved to dismiss the plaintiff's original Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), *see* Def.'s Mot. Dismiss Compl., ECF No. 7, the plaintiff timely filed an Amended Complaint on October 3, 2015, *see* Am. Compl., ECF No. 12; Fed. R. Civ. P. 15(a)(1)(B). In her Amended Complaint, the plaintiff claims that MFA's failure to compensate her for the overtime hours she alleges that she worked between October 2012 and August 2015 violated: (1) the District of Columbia Wage Payment and Collection Law ("WPCL"), D.C. Code §§ 32-1301 *et seq.*; (2) the District of Columbia Minimum Wage Revision Act ("MWRA"), D.C. Official Code §§ 32-1001 *et seq.*; and (3) the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* Am. Compl. ¶¶ 59–90.[1]

Thereafter, MFA renewed its motion to dismiss under Rules 12(b)(1) and 12(b)(6), challenging the Court's jurisdiction to review the plaintiff's claims under the WPCL and MWRA and further contending that the plaintiff fails to state a claim under both District of Columbia statutes and the federal FLSA. *See* Def.'s Mot. In response, the plaintiff moved to amend her complaint a second time to: (1) withdraw her MRWA claim; and (2) include additional factual allegations in support of her remaining claims under the WPCL and FLSA, *see* Pl.'s Mot. Arguing that the plaintiff's proposed amendments fail to cure the purported deficiencies identified in its motion to dismiss, MFA contends that the plaintiff's request to file a Second Amended Complaint must be denied as futile. Def.'s Opp'n Mot. Leave File Second Am.

---

[1] In light of this subsequent filing, the defendant's motion to dismiss the plaintiff's original complaint was denied, as moot. *See* Minute Order, dated June 8, 2016.

Compl., ECF No. 17.  Both the defendant's motion to dismiss and the plaintiff's motion to amend are now ripe for consideration.[2]

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, —— U.S. ——, 134 S. Ct. 2056, 2067 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability," but "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action" to provide "grounds" of "entitle[ment] to relief," *Twombly*, 550 U.S. at 555, and "nudge[] [the] claims across the line from conceivable to plausible," *id.* at 570.  Thus, "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, even if doubtful in fact. *Twombly* at 555; *Sissel v. U.S. Dep't of Health &*

---

[2]      During the course of briefing these motions, the plaintiff moved to submit a sur-reply to respond to various arguments the plaintiff contends were raised for the first time in MFA's reply in support of its motion.  Pl.'s Mot. Leave File Sur-Reply, ECF No. 18.  The parties strenuously disagree as to the plaintiff's entitlement to this additional filing.  *See* Def.'s Opp'n Mot. Leave File Sur-Reply, ECF No. 20.  Nonetheless, in the interest of the full and fair consideration of the plaintiff's claims, the Court will consider the arguments laid out in all of the parties' filings to resolve the pending motions, and the plaintiff's request to supplement her earlier submissions is granted.

*Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014), *cert. denied sub nom. Sissel v. Dep't of Health &*
*Human Servs.*, 136 S. Ct. 925 (2016) (in considering a Rule 12(b)(6) motion, the "court assumes
the truth of all well-pleaded factual allegations in the complaint and construes reasonable
inferences from those allegations in the plaintiff's favor, but is not required to accept the
plaintiff's legal conclusions as correct" (internal citations omitted)).  In addition, courts may
"ordinarily examine" other sources "when ruling on Rule 12(b)(6) motions to dismiss, in
particular, documents incorporated into the complaint by reference, and matters of which a court
may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322
(2007); *see also English v. District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013).

   "[T]he grant or denial of leave to amend is committed to a district court's discretion."
*Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  While leave to amend a complaint
should be freely granted when justice so requires, *see* Fed R. Civ. P. 15(a)(2), the Court may
deny a motion to amend if such amendment would be futile.  *Foman v. Davis,* 371 U.S. 178, 182
(1962); *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) (citing *James Madison*
*Ltd. by Hecht v. Ludwig,* 82 F.3d 1085, 1099 (D.C. Cir. 1996)).  Where a plaintiff "'could not
allege additional facts that would cure the deficiencies in her complaint,'" a District Court acts
within its discretion in denying leave to amend the complaint as futile.  *See Rollins v. Wackenhut*
*Servs., Inc.*, 703 F.3d 122, 131 (D.C. Cir. 2012) (quoting *Belizan v. Hershon*, 434 F.3d 579, 584
(D.C. Cir. 2006)).

## III.    DISCUSSION

   MFA's objection to the plaintiff's request to amend her complaint for a second time rests
on its view that the allegations set out in the proposed Second Amended Complaint cannot
overcome MFA's outstanding motion to dismiss.  As such, to resolve the pending motions, the

Court must consider whether the plaintiff's claims, as alleged in the proposed Second Amended Complaint, would be dismissed for the reasons laid out in MFA's pending motion to dismiss.  To that end, the discussion that follows addresses MFA's objections to the plaintiff's claims under the WPCL and FMLA in turn.

> **A.    The WPCL Broadly Prohibits Wage Theft by District Employers, Regardless of the Physical Location of their Employees.**

MFA asserts that, because the plaintiff performed a substantial majority of her work during the relevant period from her home in Virginia, the plaintiff is ineligible for relief under the WPCL.  Def.'s Mem. at 6–8.  Specifically, MFA contends that, due to her telework arrangement, the plaintiff was not "employed in the District of Columbia" within the meaning of the WPCL and, as a result, the Court "lacks jurisdiction" over the plaintiff's claim under the statute.  *Id.*

While MFA generally casts this argument as a challenge to the Court's subject-matter jurisdiction over the plaintiff's WPCL claim, *see* Def.'s Mem. at 6–8, its motion is more readily understood as an attack on the sufficiency of the allegations underlying the plaintiff's claim.  Indeed, as the plaintiff correctly notes, Pl.'s Opp'n at 4 n.3, the question whether the plaintiff qualifies as a covered employee under the WPCL has no bearing on the Court's exercise of supplemental subject-matter jurisdiction over the plaintiff's state law claim, *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) (explaining that, in general, "when [the legislature] does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character").  Since MFA advances no other basis for challenging the Court's jurisdiction over this claim, the defendant's motion to dismiss the plaintiff's WPCL claim pursuant to Federal Rule of Civil Procedure 12(b)(1) is denied.

Instead, the following discussion addresses MFA's alternative argument that the plaintiff's WPCL claim must be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.  Following a brief summary of the relevant statutory framework, the plaintiff's allegations in support of her WPCL claim are considered below.

### 1.   *Statutory Framework*

Enacted by Congress in 1956 to "provide for the payment and collection of wages in the District of Columbia," Act of Aug. 3, 1956, 70 Stat. 976, the WPCL governs the methods by which District of Columbia employers pay their workers and provides basic guarantees to ensure that workers receive the wages they are owed.

The statute's substantive provisions dictate how and when employers in the District pay their employees.  In particular, the WPCL requires, with certain limited exceptions, "[e]very employer [to] pay all wages earned to his employees at least twice during each calendar month, on regular paydays designated in advance by the employer."  *See* D.C. Code § 32-1302.  Since enactment, the WPCL has applied broadly to cover most private employment arrangements in the District.  The statute initially defined the term "employer" to include every private "individual, partnership, firm, association, corporation . . . employing any person in the District of Columbia," as well as any legal successor or representative thereof, while the term "employee" included "any person suffered or permitted to work by an employer except any person employed in a bona fide executive, administrative, or professional capacity."  Act of Aug. 3, 1956, 70 Stat. 976.

After its initial enactment, the WPCL remained unaltered for nearly sixty years until, in 2014, the statute was amended as part of the Wage Theft Prevention Amendment Act, which "enhance[d] applicable remedies, fines, and administrative penalties when an employer fails to

pay earned wages." Wage Theft Prevention Amendment Act of 2014, 61 D.C. Reg. 10157 (Oct. 3, 2014). Among other changes, these recent amendments expanded the WPCL's already-broad reach to cover additional categories of employers and a wider universe of employees. Specifically, the definition of covered employers was broadened to include general contractors and subcontractors, as well as the legal representatives and successors thereof. *Id.*, Sec. 2(a)(1). Likewise, the definition of "employee" was broadened to remove an existing exception for individuals holding executive, administrative, and professional positions. *Id.*, Sec. 2(a)(2). Following these amendments, the statute's substantive provisions apply to, *inter alia*, any private "corporation . . . employing any person in the District of Columbia," D.C. Code § 32-1301(1), and protects "any person suffered or permitted to work by" such an employer, *id.* § 32-1301(2).

Beyond expanding the WPCL's coverage, the 2014 amendments also enhanced the statute's enforcement provisions, providing additional remedies for individuals seeking to obtain wages withheld in violation of the statute's substantive provisions. In particular, the WPCL's civil remedies section now provides that "[a]ny employee or person aggrieved by" a violation of the WPCL, or any of three additional worker-protection statutes, "may bring a civil action in a court of competent jurisdiction against the employer." *Id.* § 32-1308. Under the amended enforcement provision, prevailing employees are entitled to receive "reasonable attorneys' fees and costs and . . . such legal or equitable relief as may be appropriate to remedy the violation, including, without limitation, the payment of any back wages unlawfully withheld, reinstatement in employment, and injunctive relief." *Id.*

In adopting these most recent amendments, the D.C. Council emphasized the significant financial cost wage theft imposes on both individual workers and the broader economy. For

example, a report accompanying passage of the bill by the Council's Committee on Business,

Consumer and Regulatory Affairs notes:

> Underpaying or stealing wages from workers lowers tax revenues, which can depress consumer spending and stunt economic growth because less disposable income translates into less money spent at local businesses.  In addition, ethical employers who abide by federal and state wage and hour laws are at a competitive disadvantage, as they have higher labor costs.  Furthermore, dishonest employers steal from taxpayers when they do not pay their fair share of payroll taxes.

Comm. on Bus., Consumer and Regulatory Affairs, Bill 20-671, the "Wage Theft Prevention

Amendment of Act of 2014" (2014), http://lims.dccouncil.us/Download/31203/B20-0671-

CommitteeReport1.pdf ("D.C. Council Report").  With these concerns in mind, the recent

amendments to the WPCL and other worker protection statutes were intended to, *inter alia*,

"make[] it easier for workers to collect awards from businesses that steal their wages."  *Id.*

Under the District of Columbia Home Rule Act, Pub. L. No. 93–198, 87 Stat. 774

(1973) (codified as amended at D.C. Code §§ 1-201.01 *et seq.*), bills enacted by the D.C. Council

are submitted for Congressional review and, with certain exceptions, become law only if

Congress declines to adopt a joint resolution of disapproval within thirty days, D.C. Code § 1-

206.02(c)(1).  The Wage Theft Prevention Amendment Act was submitted to Congress on

January 26, 2015, *see* 161 Cong. Rec. H355-01, and, at the conclusion of the thirty-day review

period, went into effect on February 26, 2015, 62 D.C. Reg. 3603 (Mar. 27, 2015).

Set against this statutory backdrop, the sufficiency of the allegations set out in the

plaintiff's proposed Second Amended Complaint is considered below.

### 2.    *The Plaintiff's Alleged Telework Assignment is Covered by the WPCL*

Seeking dismissal of the plaintiff's WPCL claim, MFA does not dispute that the statute

provides a broad cause of action for employees seeking to recover unpaid wages from a wide

variety of District of Columbia employers.  Def.'s Mem. at 7 (acknowledging that the WPCL

10

"provides a cause of action for an employee to recover unpaid wages against any entity 'employing any person in the District of Columbia'" (quoting D.C. Code § 32-1301(1)). Moreover, MFA concedes that, in contrast to other District worker protection statutes, the WPCL's coverage is not explicitly limited to employees who work primarily in the District. *Id.* Nonetheless, drawing on limitations included in these *other* worker protection statutes, MFA argues that the WPCL must be construed to apply only "to claims arising out of work performed in the District of Columbia." *Id.* Thus, because the plaintiff's telework arrangement led her to perform the work for which she now seeks compensation outside the District, MFA argues that she is ineligible for relief under the WPCL.

The plaintiff urges the Court to reject MFA's proposed construction of the WPCL, arguing instead that both the statute's plain language, as well as the remedial purposes underlying its enactment and recent amendment, demonstrate an effort by Congress and the D.C. Council to impose no geographic limitation on the employees it protects. Thus, while apparently conceding that the bulk of the work for which she seeks compensation was performed outside the District,[3] the plaintiff contends that the "focus of the []WPCL is on the actions of an employer," and not the location of the employee. Pl.'s Opp'n at 8. Thus, the plaintiff presses that Congress and the D.C. Council "intended . . . the []WPCL's coverage to be broad enough to include reassigned teleworking employees" who, like the plaintiff, work remotely for District-based employers. *Id.*

---

[3]     The plaintiff initially alleged that she was "permitted" to telework beginning in 2010, *see* Am. Compl. ¶ 25, but now alleges that she was "assigned" to her remote-work arrangement, SAC ¶ 25.  In any event, the plaintiff's submissions in connection with the present motions make clear that the work for which she seeks compensation was performed predominately outside of the District. *See*, *e.g.*, Pl.'s Opp'n at 12–13 (explaining that, as a result of her telework arrangement, she now does her work "from her home").

At root, then, the parties' dispute turns on the interpretation of the coverage provisions of the WPCL. As interpreted by MFA, the statute protects only those employees who work primarily within the District, with the physical location of the employee ultimately dictating whether or not the WPCL applies. By contrast, the plaintiff understands the statute to apply broadly to all employees, regardless of their physical location, who work for an employer operating in the District.

To assess these competing interpretations, the Court must consider first whether the "language at issue has a plain and unambiguous meaning with regard to the particular dispute in [this] case." *United States v. Villanueva–Sotelo*, 515 F.3d 1234, 1237 (D.C. Cir. 2008) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). If such an unambiguous meaning is apparent, the court's "inquiry ends and [the court must] apply the statute's plain language." *Id.* (internal quotations and citations omitted); *see also United States v. Cordova*, 806 F.3d 1085, 1099 (D.C. Cir. 2015) ("In determining the 'plainness or ambiguity of statutory language' we refer to 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" (quoting *United States v. Wilson*, 290 F.3d 347, 353 (D.C. Cir. 2002))). Where, however, "the statutory language is ambiguous, [the court must] look beyond the text for other indicia of [legislative] intent." *Villanueva–Sotelo*, 515 F.3d at 1237 (citing *Staples v. United States*, 511 U.S. 600, 605 (1994)).

### a) *Plain Language of the WPCL*

MFA's suggestion that the WPCL is intended to protect only those workers who perform their work duties within the District is difficult to square with either the statute's plain language or the legislative goals identified by Congress and the D.C. Council in enacting the statute. The WPCL provides a private right of action for "*any* employee or person aggrieved by a violation"

of various District of Columbia worker protection statutes.  D.C. Code § 32-1308(a)(1)

(emphasis added).[4]  The statute defines "employee" to include "*any person* suffered or permitted

to work by an employer."  *Id.* § 32-1301(2) (emphasis added).  Thus, neither the provision

authorizing private actions under the WCPL, nor the provision defining who may pursue such an

action, indicates in any way that the statute's reach is limited to individuals who work within the

District.  Indeed, the only geographic limitation on the scope of relief provided under the WPCL

appears in the definition of a covered "employer," which includes, *inter alia*, "every . . .

corporation . . . employing any person in the District of Columbia."  *Id.* § 32-1301(1).  By its

plain terms, then, the WPCL permits any individual "suffered or permitted to work" by a

corporation "employing any person in the District of Columbia" to bring an action to collect

wrongfully withheld wages.  *Id.*  The plaintiff alleges, and MFA apparently does not contest, that

MFA qualifies as an "employer" within the meaning of the statute.  *See* SAC ¶¶ 10, 35; *see*

*generally* Def.'s Mem.  As such, the WPCL would appear, on its face, to permit the plaintiff to

pursue her claim for unpaid wages against MFA.[5]

> b)   *Limitations in Other District of Columbia Statutes are Not*
> *Applicable to the WPCL*

Resisting this interpretation, MFA argues that the WPCL must be construed in relation to

the other worker protection statutes adopted by the District in the years since the WPCL was

---

[4]     Though neither party addresses the issue, the inclusion of "any person . . . aggrieved by a violation" of the
WPCL in this language would appear to allow for individuals who do not even qualify as an "employee" within the
meaning of the statute, but who are otherwise "aggrieved" by a violation of the substantive worker protection
statutes to maintain a civil action under this subsection.  In any event, because the Court determines that the plaintiff
qualifies as an "employee" within the meaning of the WPCL the Court need not—and does not—consider this
potential alternative basis for relief.
[5]     As addressed, *infra* Part III.A.2.c., MFA raises the legitimate concern that the scope of the literal language
in the WPCL would bring within this statute's coverage persons working anywhere in the world for an employer
operating in the District of Columbia.  Nonetheless, as explained below, while the parties have cited no cases
addressing this scenario, the Court has little trouble concluding that any concern regarding the potentially expansive
reach of the language of the WPCL is not implicated in the present case.

enacted.  Def.'s Mem. at 7.  Specifically, MFA points to the MWRA, which sets out minimum

hourly wages in the District of Columbia and requires employers to pay overtime wage rates for

hours worked in excess of 40 hours per workweek.  *See* D.C. Code § 32-1003.[6]  As MFA

explains, application of the MWRA is expressly limited to individuals who primarily perform

their work duties in the District.  Def.'s Mem. at 6.  Specifically, the statute provides:

> A person shall be employed in the District of Columbia when: (1) The person
> regularly spends more than 50% of their working time in the District of Columbia;
> or (2) [t]he person's employment is based in the District of Columbia and the person
> regularly spends a substantial amount of their working time in the District of
> Columbia and not more than 50% of their working time in any particular state.

D.C. Code § 32-1003(b).  Though acknowledging that this language does not appear in the

WPCL, MFA suggests that it is "only logical" to interpret the two statutes "consistently."  Def.'s

Mem. at 8.  In support, MFA notes that, as an element of the aforementioned Wage Theft

Prevention Amendment Act, the D.C. Council included in the amended civil actions provision of

the WPCL a cause of action for violations under the MWRA.  *Id.*; *see* D.C. Code § 32-1012(a)

(providing that a "civil action" under the MWRA "may be commenced according to" the civil

action provision of the WPCL); *see also* D.C. Code § 32-1308.

Reviewing these various provisions, MFA's efforts to import restrictions imposed under

the MWRA into the separate statutory scheme set out under the WPCL are unpersuasive.  First,

MFA's assertion that the WPCL must be construed in parallel with the MWRA runs contrary to

the language and history of the individual statutes.  As explained above, *supra* Part III.A.1,

---

[6]      As already noted, the plaintiff initially brought a claim under the MWRA, *see* Am. Compl. ¶¶ 67–78,
before removing this claim from her proposed Second Amended Complaint, *see* Pl.'s Mot.  At least two Judges on
this Court have concluded that the MWRA provides the exclusive remedy for employees seeking unpaid overtime
wages in the District, at least where a plaintiff brings claims under both the MWRA and the WPCL based on the
same factual allegations.  *See Driscoll v. George Washington Univ.*, 938 F. Supp. 2d 19, 25 (D.D.C. 2013);
*Thompson v. Digicon Corp.*, 107 F. Supp. 3d 49, 52 (D.D.C. 2015).  Nonetheless, since this exclusivity issue is
raised by neither party, the Court need not decide, at this stage, what relief may be available to the plaintiff should
she prevail on her remaining WPCL claim.

Congress enacted the WPCL in the mid-1950s to establish basic requirements for employers in the District regarding how and when they must pay wages owed to their employees and to provide a means by which employees may recover unpaid wages from covered employers. Roughly forty years later, the D.C. Council adopted the MWRA to institute a local minimum wage, which must remain at least $1.00 above the federal minimum wage, and require employers to pay a premium wage for overtime hours. *See Minimum Wage Act Revision Act of 1992*, § 2, 40 D.C. Reg. 761 (Jan. 29, 1993); *see* D.C. Code § 32-1001(a).

While both statutes apply broadly to nearly every private employment arrangement, *see* D.C. Code §§ 32-1002(2), (3); *id.* §§ 32-1302(1), (2), the remedies afforded under the MWRA are generally "far more restrictive" than those set out in the earlier-enacted WPCL. *Driscoll v. George Washington Univ.*, 938 F. Supp. 2d 19, 23 (D.D.C. 2013). For example, unlike the WPCL, the MWRA shields employers demonstrating a good faith effort to comply with its provisions from liquidated damages and prohibits certain categories of class actions for groups of individuals seeking relief under the statute. *See id.* (citing relevant statutory provisions). Likewise, consistent with these more limited substantive provisions, the MWRA has, since its enactment, been confined explicitly to individuals working principally within the District. *See Minimum Wage Act Revision Act of 1992*, § 4(b), 40 D.C. Reg. 761, 762–63 (Jan. 29, 1993), with no similar limitation appearing in the WPCL.

MFA acknowledges this distinction, and points to no other language in either statute indicating that the restrictions limiting the coverage of the MWRA apply to claims under the WPCL. This absence is telling. Indeed, the provision of the MWRA limiting its reach to employees working primarily in the District appears among that statute's substantive requirements. *See* D.C. Code § 32-1003(b). Had the Council intended this limitation to apply to

*other* requirements set out in *separate* worker protection statutes, the placement of this language among the MWRA's substantive provisions is far from intuitive.  Instead, absent any indication that this limiting provision is intended to apply beyond the statute itself, this language is most readily understood as modifying only the scope of the minimum wage and other requirements set out in the MWRA.  *Accord Driscoll*, 938 F. Supp. 2d at 23 ("The D.C. Council enacted a comprehensive, detailed, and restrictive enforcement scheme for violations of the [MWRA] with full awareness of the more expansive enforcement provisions of the preexisting [WPCL].").

Moreover, recent amendments to both statutes further evince the Council's desire to ensure the broad application of local worker protection statutes, particularly the WPCL.  Indeed, in addition to expanding the definition of covered employment relationships subject to the requirements of the WPCL, the Wage Theft Prevention Amendment Act included corresponding language broadening the MWRA's coverage to include additional employers in the District. Wage Theft Prevention Amendment Act of 2014, Sec. 3(a), 61 D.C. Reg. 10157, 10169 (Oct. 3, 2014).  Thus, when recently revising the scope of protections afforded under each statute, the D.C. Council expanded, not reduced, the coverage of both the MWRA and WPCL.

MFA takes a different view of the original scope of the WPCL, as well as the import of these recent amendments.  Specifically, MFA notes that the definitions of covered employers and employees under the WPCL do not specifically encompass individuals who perform their work duties outside of the District.  Emphasizing this purported omission, MFA suggests that, "[i]f the intention had been to cover individuals who performed their duties outside the District, it would have been easy enough to say so, or to amend the definition to do so."  Def.'s Reply Supp. Mot. Dismiss Am. Compl. ("Def.'s Reply") at 2, ECF No. 16.  Thus, MFA suggests that the Council,

had it intended to ensure that employees working outside the District were covered by the WPCL, would have made this clear in its most recent modifications to the statute. *Id.* at 2–3.

  This view of this recent legislative history rests, however, on the faulty assumption that language explicitly addressing employees working outside the District would have been necessary to ensure that such employees are covered under the WPCL. Indeed, as explained above, the most natural reading of the relevant provisions of the WPCL suggest that the statute, as originally enacted, protects individuals who work for employers operating in the District of Columbia regardless of the location in which they perform their work duties. While MFA perceives some ambiguity in this language, which ambiguity MFA believes the Council necessarily would have sought to remedy through further amendment, it is equally plausible that the Council, believing that the statute's terms were clear, saw no reason to modify the language already in place. Indeed, assuming the Council *did* perceive a need to provide additional clarity in adopting the 2014 amendments, the Council had a ready model for limiting the scope of the WPCL in the limiting provision previously included in the MWRA. Nonetheless, the Council did not incorporate this language into the WPCL or otherwise indicate that the limitations set out in the MWRA apply to other worker protection statutes addressed through the 2014 amendments. With this in mind, neither the Council's decision not to modify the coverage provisions of the WPCL, nor the Council's decision to include the MWRA among the statutes for which the WPCL's civil remedies provision provides relief, is suggestive of a desire to incorporate restrictions set out in the MWRA into the WPCL.

  Consistent with this interpretation, at least one Judge on this Court has applied the WPCL to award unpaid wages for work performed outside the District. In *Ventura v. Bebo Foods, Inc.*, numerous former wait staff and bussers who worked at two restaurants operated by a common

owner alleged that their wages were wrongfully withheld under the FLSA and WPCL.  595 F. Supp. 2d 77, 79 n.1, 80 (D.D.C. 2009).  While the violations claimed by the plaintiffs began while they worked at the first restaurant, which was located in the District, the alleged violations continued for roughly eighteen months after the plaintiffs were transferred to the second restaurant, which was located in Virginia.  *Id.*  As a result, much of the work for which the plaintiffs sought compensation occurred outside the District.  *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 31 & n.10 (D.D.C. 2010).  Nonetheless, the Court awarded damages under the WPCL to numerous plaintiffs for wages earned while working at the Virginia restaurant.  *Id.* at 23–30.  While not directly addressing the question presented here, that is whether the Virginia-based plaintiffs properly fell within the scope of the WPCL, the *Ventura* Court was clearly aware of the narrower protections afforded under the MWRA.  *Id.* at 31 n.10 (noting that only one plaintiff worked predominately in the District and, therefore, qualified for protection under the MWRA).  Thus, in awarding damages under the WPCL to individuals who worked primarily outside the District, the Court implicitly embraced the broader interpretation of the statute's coverage advanced by the plaintiff here.

The non-binding authority cited by MFA in support of its proposed interpretation is not to the contrary.  For example, two of the three cases cited by MFA involved out-of-District plaintiffs who voluntarily declined to bring claims under the WPCL.  First, in *Encinas v. J.J. Drywall Corp.,* employees of a drywall installation company operating in the District and Maryland brought a class action against their employer alleging violations of the FLSA, as well as claims under both the WPCL and a corresponding Maryland wage payment statute.  840 F. Supp. 2d 6, 7 (D.D.C. 2012).  In so doing, the plaintiffs sought to certify separate sub-classes for purposes of pursuing their state law claims.  *Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 5

(D.D.C. 2010).  Similarly, in *Ayala v. Tito Contractors, Inc.*, 82 F. Supp. 3d 279, 286 (D.D.C.

2015), the plaintiffs sought relief under the WPCL for two employees who performed work on a

jobsite in the District, apparently forgoing such relief for other employees who performed work

for the same employer in Maryland.  If all of these employees were eligible for relief under the

WPCL, MFA posits, "there would have been no need" to seek separate relief for the Maryland-

based employees under the separate Maryland statute.  Def.'s Reply at 4.

On the contrary, however, the *Encinas* and *Ayala* plaintiffs' decision to pursue their state

law claims separately hardly compels the conclusion that employees who work primarily in

Maryland are ineligible for relief under the WPCL.  A far more likely explanation for this

litigation strategy is that the Maryland-based employees sought relief under Maryland law in

order to obtain the more generous remedies available at that time under that state's wage statute.

*Encinas*, 840 F. Supp. 2d at 11 (awarding treble damages to the Maryland-based plaintiffs, but

not the plaintiffs working in the District); *see also Quiroz v. Wilhelm Commercial Builders, Inc.*,

No. CIV.A. WGC-10-2016, 2011 WL 5826677, at *8 (D. Md. Nov. 17, 2011) (explaining that,

unlike under the Maryland wage statute, an "award of treble damages is not a remedy available

under District of Columbia law").[7]  Moreover, even assuming the *Encinas* and *Ayala* plaintiffs

sought relief under the Maryland statute to avoid raising the issue presented here, their cautious

litigation strategy has no bearing on the ultimate resolution of this issue in this case.  Indeed,

because the plaintiffs successfully avoided the issue at hand, the courts in those cases need not

have—and ultimately did not—consider whether the Maryland-based employees were eligible

for relief under the WPCL.

---

[7]     Subsequent to the alleged violations at issue in *Encinas* and *Ayala,* the D.C. Council amended the WPCL in 2013 to provide for treble damages for violations of the statute's substantive requirements.  Fiscal Year 2014 Budget Support Act of 2013, § 2062(b), 60 D.C. Reg. 12472, 12490; D.C. Code § 32-1303(4).

Much the same, in *Quiroz v. Wilhelm Commercial Builders, Inc.*, a Magistrate Judge in the District of Maryland, citing no authority, held that employees who performed work exclusively in the District were not eligible for treble damages available under *Maryland* law. 2011 WL 5826677, at *8. As before, because only the reach of the Maryland statute was at issue, the court did not have occasion to consider whether individuals who work outside of the District are eligible for relief under the WPCL. Focusing on the *Quiroz* Court's grant of relief to Maryland-based employees under Maryland law, MFA suggests that the relevant Maryland statutory provisions mirror those set out in the WPCL, and must therefore be interpreted in a similar manner. This suggestion is unavailing. In fact, while the definition of covered "employers" under the Maryland statute is substantially similar to the broad language set out in the WPCL, Md. Code, Lab. & Empl. § 3-501, the Maryland statute does not include a corresponding definition of a covered "employee," *see id.* As a result, the *Quiroz* Court's interpretation of the Maryland statute has little bearing on the interpretation of the WPCL in this case.

   c)   *Congress and the Council Intended the WPCL to Apply Broadly*

Finally, MFA suggests, without elaboration or citation to binding authority, that there is a "substantial question whether the District could exercise its authority over payment of wages to individuals employed outside the District." Def.'s Mem. at 7.[8] According to MFA, the District "[c]ertainly . . . has no interest in whether or not individuals working . . . outside the District are paid their wages." *Id.* Further, seeking to distinguish "remedial civil rights" statutes, which

---

[8]   To the extent that MFA means to question the D.C. Council's authority to regulate interactions between local employers and their employees, this half-hearted argument carries little force. Indeed, Congress and *not* the D.C. Council adopted the relevant provisions of the WPCL, which have stood apparently unchallenged for nearly six decades. Likewise, as previously explained, the most recent amendments adopted by the D.C. Council went into effect only after the conclusion of a mandatory period of Congressional review.

"must be generously construed," MFA suggests that the WCPL "simply provides a statutory remedy for unpaid wages," with no suggestion of "an intent to provide a remedy for failure to pay wages to individuals whose jobs are located outside the District." Def.'s Reply at 3.

On the contrary, however, as explained above, in recently expanding the WPCL's coverage, the D.C. Council highlighted the significant economic impact of wage theft by employers in the District regardless of the physical location of their employees. Most significantly, the Council explained that withholding earned wages places law-abiding District employers at a competitive disadvantage and, by reducing payroll taxes, places a financial strain on the District itself. D.C. Council Report at 2. These broader economic concerns are particularly apt where aggrieved employees are assigned to work just outside of the District. As the Council noted, "[u]nderpaying or stealing wages from workers . . . can depress consumer spending and stunt economic growth because less disposable income translates into less money spent at local businesses." *Id.*

In this vein, it makes little difference whether an employee performs work in the District or just over the Virginia border. In either case, wage theft ultimately leads to fewer customers for businesses in the District and harms the economy throughout the Washington metropolitan area. As the plaintiff observes, a contrary rule would encourage District employers, seeking to avoid coverage under the WPCL, to reassign their employees to telework assignments that require them to work primarily outside the District. Pl.'s Opp'n at 14–15. This risk of under-enforcement is most apparent where, as here, the jurisdiction in which the plaintiff is assigned to work lacks any comparable private right of action to pursue wrongfully withheld wages. *See Orbit Corp. v. FedEx Ground Package Sys., Inc.*, No. 2:14CV607, 2015 WL 4605767, at *4

(E.D. Va. July 30, 2015) (explaining that "it appears undisputed that Plaintiffs lack a private cause of action under [the Virginia wage and hour statute]" (citing authorities)).

This observation notwithstanding, MFA is correct that the WPCL, by its plain terms, potentially encompasses a broad array of employment relationships bearing little connection to the District of Columbia or the greater Washington metropolitan area.  In this light, MFA argues that Congress and the Council could not have intended to protect "any employee employed anywhere in the country by an employer who happens to have one or more employees in the District."  Def.'s Reply at 3.  Nonetheless, while raising reasonable concerns regarding the WPCL's potentially expansive reach, MFA provides no support for the proposition that the WPCL must include *some* limitation on its extraterritorial effect.

In any event, recognizing the general concerns raised by MFA, the plaintiff's allegations in this case bring her squarely within the scope of the WPCL's coverage.  Indeed, even assuming the WPCL must be interpreted to protect only those employees with a *bona fide* connection to the District, the Court has little difficulty concluding that the plaintiff qualifies for protection under the statute.  In construing similar state worker protection statutes, other courts have considered a number of factors in determining whether out-of-state employees may bring an action against their in-state employer.  *See*, *e.g.*, *McGoldrick v. TruePosition, Inc.*, 623 F. Supp. 2d 619, 631 (E.D. Pa. 2009) (considering, where statute at issue was construed to restrict coverage to employees "based in" the state, (1) the location of the employer's headquarters; (2) the employee's physical presence working in the state; (3) the extent of employee's contact with the in-state employer (i.e. reporting, direction, supervision, hiring, assignment, termination); (4) the location of the employee's residence; and (5) the employee's ability to bring a claim in another forum).  Even if the Court were to adopt similar constraints on the reach of the WPCL,

the plaintiff has amply demonstrated that the statute would apply here based on a variety of factors, including that the plaintiff: (1) was hired in the District of Columbia, SAC ¶¶ 16, 24; (2) was supervised and received directions from her employer in the District of Columbia, which maintains no facility in the state in which the plaintiff performed her work duties, *id.* ¶¶ 26, 29; (3) was issued pay statements from a District of Columbia address to an address in the District, *id.* ¶ 27; (4) received correspondence from her employer expressly recognizing the plaintiff's eligibility for relief under District of Columbia worker protection laws, *id.* ¶¶ 30–32; and (5) since the initiation of the present action, has worked periodically at her employer's office in the District of Columbia, *see* Aff. Sharon Lincoln-Odumu (Mar. 25, 2016), ECF No. 22-1 (explaining that, beginning in February 2016, the plaintiff was permitted to work from MFA's facility in the District two days every other week).

Thus, even assuming that some limitation on the WPCL's extraterritorial reach should be applied, there is little reason to believe that Congress and the Council did not intend to bring within the ambit of the WPCL those individuals, like the plaintiff, whose telework arrangements lead them to work in the greater Washington area for their District-based employers.

*                    *                    *

In sum, both the plain language of the WPCL and the legislative history accompanying its enactment and recent amendment confirm the plaintiff's eligibility for relief under the statute. As such, MFA's position that the plaintiff's request to submit a Second Amended Complaint must be denied as futile is incorrect.  The defendant's motion to dismiss the plaintiff's WPCL claim is, therefore, denied.

### B.   The Plaintiff Has Sufficiently Plead a Claim under the FLSA

Turning to the plaintiff's claim under federal law, in addition to establishing a federal minimum wage, the FLSA requires employers to pay an overtime premium for hours worked in excess of forty hours per week.  29 U.S.C. §§ 206(a)(1), 207(a)(1).  Unlike federal employment discrimination statutes, the FLSA does not require aggrieved employees to demonstrate an employer's intent to violate the substantive requirements set out in the statute.  *Figueroa v. District of Columbia Metro. Police Dep't,* 633 F.3d 1129, 1134–35 (D.C. Cir. 2011).  Instead, to make out a claim under the statute, an aggrieved employee must only "'prove[] that he has in fact performed work for which he was improperly compensated.'"  *Id.* (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687 (1946)).  Consequently, an FLSA claim generally consists of two fundamental elements: (1) performance of work and (2) improper compensation.  *Figueroa*, 633 F.3d at 1135; *see also Bilal–Edwards v. United Planning Org.,* 15 F. Supp. 3d 1, 17 (D.D.C. 2013).

In seeking dismissal of the plaintiff's FLSA claim, MFA argues that the plaintiff's Amended Complaint "offers no more than conclusory allegations that MFA failed to pay her overtime."  Def.'s Mem. at 9.  Specifically, relying on out-of-Circuit authority, MFA contends that the plaintiff's failure to allege "at least one workweek when she worked in excess of forty hours and was not paid for the excess hours" renders her allegations insufficient to state a claim under the FLSA.  *Id.* at 9–10 (internal quotations omitted) (quoting *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 646 (9th Cir. 2014)).  Further, given that the plaintiff alleges that she did receive some overtime pay beginning in December 2013, MFA notes that she fails to allege that she ever worked any additional overtime hours for which she was not compensated after that date.  Def.'s Mem. at 10.  The plaintiff responds that, under the lenient standard

adopted in other cases before this Court, the allegations set out in her Amended Complaint are sufficient to support her claim under the FLSA.

Following the Supreme Court's reexamination of the pleading standard set out in Federal Rule of Civil Procedure 8(a) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), courts have adopted differing approaches to assessing the sufficiency of FLSA claims in response to a motion to dismiss pursuant to Rule 12(b)(6). *See Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52, 58 (D.D.C. 2012) (citing *Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 667 (D. Md. 2011)).  On one hand, "[m]any courts have held . . . that a plaintiff should at a minimum allege approximately the number of hours worked for which overtime wages were not received." *Butler*, 800 F. Supp. 2d at 667–68 (collecting cases).  At the same time, other courts have concluded that "the basic allegation that plaintiff worked overtime more than forty hours in a week and did not receive overtime compensation" is sufficient to state a valid FLSA claim. *Id.* (collecting cases).  While the D.C. Circuit has not had occasion to consider the appropriate standard, at least two Judges in this District have adopted the latter, more lenient approach in testing the sufficiency of an FLSA claim. *See Driscoll*, 42 F. Supp. 3d at 58–59 (explaining that "[a]n allegation of a specific number of hours adds nothing as far as the plausibility standard is concerned, for there is no *de minimis* exception or other threshold applicable to a FLSA overtime claim" and noting that estimations alleged in an initial complaint are subject to amendment after discovery and may still be contested at trial); *Freeman v. MedStar Health Inc.*, 87 F. Supp. 3d 249, 257 (D.D.C. 2015).

There is no need to wade into these murky waters to dispose of the present motions. Even under the more stringent standard advanced by MFA, the allegations set out in the plaintiff's proposed Second Amended Complaint are sufficient, at this stage, to support her

FLSA claim.  As set out under the heading "Overtime Hours Not Paid," the proposed Second

Amendment Complaint identifies six specific weeks during the relevant period during which the

plaintiff alleges she worked at least four and a half overtime hours for which she was never

compensated.  SAC ¶¶ 58–64.

MFA apparently concedes that these additional allegations are sufficient to make out a

valid FLSA claim, *see* Def.'s Opp'n Mot. Leave File SAC at 3, ECF No. 17, but nonetheless

opposes the plaintiff's request to amend her complaint on the ground that she "fails to explain

why she did not make these allegations in her original Complaint or cure the deficiency when

first amending the Complaint," *id.*  Of course, this argument ignores the fact that the plaintiff

initially contended, with some support, that the more lenient pleading standard described above

governs the present action.  *See* Pl.'s Opp'n at 5–7.  Given this position, the exclusion of these

additional allegations from the plaintiff's initial filings is far from unreasonable.  Moreover, the

plaintiff's present request to amend her complaint for a second time, which request was filed less

than three weeks after MFA filed its motion to dismiss and before this action progressed beyond

these initial proceedings, presents no undue delay and does not otherwise prejudice MFA.

*Compare Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 860 (D.C. Cir. 2015) (describing as the

"very picture of undue delay" a motion to amend filed four years after an action began, one year

after summary judgment motions were resolved, and only days before trial).  Instead, the

plaintiff's timely request to amend her complaint to ensure that she has sufficiently plead her

FLSA claim, even under the more restrictive standard preferred by MFA, serves to sharpen the

issues presented in the plaintiff's claims.  In short, the Court agrees with the plaintiff the she

"readily meets" the factors identified by the D.C. Circuit for granting leave to amend her

Complaint for a second time.  Pl's Mem. Supp. Mot. Leave File SAC at 3, ECF No. 14-1.

Accordingly, the plaintiff's request to file her proposed Second Amended Complaint to include additional allegations regarding her FLSA claim is granted and, as a result, the defendant's motion to dismiss her FLSA claim is denied.

## IV.     CONCLUSION

For the foregoing reasons, the plaintiff's motion for leave to file a Second Amended Complaint is granted and, consequently, the defendant's motion to dismiss the Amended Complaint is denied, as moot.  The parties shall, in accordance with the Court's Standing Order ¶ 3, ECF No. 3, file jointly a Meet and Confer Report, by July 22, 2016, with a proposed schedule to govern further proceedings in this case.

An appropriate Order will accompany this memorandum opinion.


Date: July 8, 2016


_____
BERYL A. HOWELL
Chief Judge